*Original*

FILED

07 NOV 26 AM 10: 40

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

1    J. Kerry Bader, Attorney at Law
     964 Fifth Avenue, Ste. 214
2    San Diego, CA 92101-6128
     619-699-5995, fax 619-699-5996
3

4           UNITED STATES DISTRICT COURT
       FOR THE SOUTHERN DISTRICT OF CALIFORNIA    *PM*  DEPUTY

5

6    UNITED STATES OF AMERICA,        )
         *Defendant* )
7      ~~Plaintiff-Respondent,~~      )
                            )
8    v.                          )
                            )
9    defendant named in Complaint as    )
     JOSE LUIS OLIVARES,          )
10         *Plaintiff* )
     ~~Defendant~~-Petitioner.      )
11                             )

'07 CV 2254 BTM (AJB)

PETITION FOR WRIT OF HABEAS CORPUS
AND MOTION TO DISMISS ORDER TO
SHOW CAUSE IN COMPLAINT NUMBER
07MJ2274 AND REQUEST FOR HEARING

12

13    TO:    Karen Hewitt, United States Attorney;
           Marcel Stewart, Assistant United States Attorney

14        The above-mentioned defendant-petitioner, by and through his counsel, Kerry Bader,

15    respectfully asks this Court to grant his petition for writ of habeas corpus.

16

17    Dated: November 24, 2007

18                                Joan Kerry Bader
                               Attorney for Defendant-Petitioner

19

20

21

22

23

24

25

26

27

28

## MOTION

Defendant, by and through his attorney, Kerry Bader, pursuant to the United States Constitution, the Federal Rules of Criminal Procedure, and all other applicable statutes, case law and local rules, hereby moves this Court for an order to:

1)      grant the writ of habeas corpus or,

This motion is based upon the instant writ and notice of writ, the attached statement of facts and memorandum of points and authorities, the attached exhibits and any and all other materials that may come to this Court's attention at the time of the hearing on this motion.[1]

Respectfully submitted,

Dated:  November 24, 2007          **JOAN KERRY BADER**
                                   Attorney for Defendant

---

[1]The defendant in this matter in no way admits he is the person named in the Order To Show Cause from the District Court in Oregon. The defendant reserves the right to challenge his identity, to challenge probable  and to litigate the motion herein and all other claims he may raise in this Court or in any other Court.

# I.

## INTRODUCTION

The defendant in the case at bar denies he is the person named in the Complaint and in the OSC from Oregon.  He also denies that there is any probable cause to believe that he violated conditions of Supervised Release in any case and even if the court finds he is the person, the OSC must be dismissed based on the doctrines of res judicata, double jeopardy, separation of powers, prosecutorial delay under the Speedy Trial Act, the Sixth and the Fifth Amendments and the doctrine of Due Process.

# II.

## PROCEDURAL HISTORY AND ALLEGATIONS

**A.    Case Number 07mj2274 (Southern District of California) and Case Number 03cr-57-KI (District of Oregon)**

On or about September 19, 2007, a Complaint (07MJ2274) was filed in this Court alleging that a defendant, Jose Luis Olivares, was wanted to appear before the federal District Court in Oregon for allegedly violating conditions of Supervised Release that were imposed by the Honorable Judge King on an individual on or about April 28, 2003.  The allegations are contained in an Order to Show Cause stemming from case number CR 03-57-KI (District Court of Oregon)  why Supervised Release should not be revoked [hereinafter "Complaint" (**Exhibit 1**) and "OSC," respectively(**Exhibit 2**), or, OSC/Complaint, which are attached.

The allegations are Illegal Reentry and failure to obtain prior approval for reentry from the Department of Homeland Security and to give prior notice of reentry to the U.S. Attorney and the Probation Officer.

This Court *on September 19, 2007* produced the person who the government and the probation office claim is Jose Luis Olivares, the person alleged to have violated conditions of Supervised Release in the Oregon case.

**B.    Case Number 06-0057TJW (Southern District of California)**

This person brought to court on September 19, 2007 is the same person who was

1  acquitted on one count of 8 USC section 1326, Deported Alien Found in the United States,

2  before the Honorable Thomas Whelan in the Southern District of California, *the day before,*

3  on September 18, 2007 (Case Number 06-0057TJW, <u>United States v. Ruben Rodriguez</u>).

4      The Superseding Indictment in case number 06-0057TJW charged:

5          On or about December 5, 2005, within the Southern District of
    California, defendant RUBEN RODRIGUEZ, an alien, who previously had

6      been excluded, deported and removed from the United States to Mexico, was
    found in the United States, without the Attorney

7  General of the United States or his designated successor, the Secretary of the
Department of Homeland Security..., having expressly consented to the

8  defendant's reapplication for admission into the United States, in violation of
Title 8, United States Code, Sections 1326(a) and (b). It was further alleged

9  that the defendant had been removed subsequent to December 2, 1996. **Exhibit
3.**

10

11     **Exhibit 4** is the original Indictment in this case, issued on or about December 12, 2005,

12 which followed a Complaint that was filed on or about December 12, 2005 charging Mr.

13 Rodriguez with Being Deported Alien Found in the United States. (See attached Docket for

14 case Number 06-0057, **Exhibit 5**). Mr. Rodriguez had been arrested by Border Patrol officers

15 in the Southern District of California on or about December 9, 2005 near the U.S.-Mexican

16 border. According to the Complaint he was found by officers in the brush or near a bush after

17 they had been alerted to an underground sensor signal.

18     Mr. Rodriguez was in case number 06-0057 was acquitted of the "1326" charge on

19 September 18, 2007. (**Exhibit 6**, Judgment of Acquittal). **Exhibit 7** which is a Release Order

20 for Mr. Rodriguez issued on the same day.

21     As stated above, the day after the acquittal, September 19, 2007, the defendant in Case

22 Number 06-0057TJW was September 18, 2007.

23 **III.**

24 **PETITION FOR WRIT OF HABEAS CORPUS**

25     The defendant seeks relief from this court and release from custody based on all

26 statutes, rules, and constitutional doctrines that will be set forth below in this petition for writ

27 of habeas corpus. 28 USC sections 2255, 2241.

28     28 USC section 2241 states that writs of habeas corpus may be granted by the Supreme

1 Court, any justice thereof, the district courts and any circuit judge within their respective

2 jurisdictions. The writ of habeas corpus will only be granted where *the prisoner is in custody*

3 *for an act done or omitted in pursuance of an Act of Congress, or an order, process,*

4 *judgment or decree of a court of judge of the United States or he is in custody in violation of*

5 *the Constitution or laws or treaties of the United States.* (emphasis added).

6       Similarly, 28 USC section 2255 authorizes this Court to grant a writ of habeas corpus

7 where a prisoner is in custody under a sentence of a court established by Congress claiming

8 the right to be released because the sentence was imposed in violation of the Constitution or

9 laws of the United States and where the court was without jurisdiction to impose such a

10 sentence, *or where the sentence is imposed in excess of the maximum authorized by law or*

11 *is otherwise subject to collateral attack.* (emphasis added).

12       The defendant requests a writ of habeas corpus based on each of these doctrines listed

13 above as will be set forth in greater detail below.

14              **III.**

15             <u>**ARGUMENTS**</u>

16 **A.**   **The OSC should be dismissed because there is no probable cause to support the OSC because it is based on allegations that have been rejected in a jury trial,**

17     **implicating the doctrines of *res judicata* and collateral estoppel, and because they are comprised of allegations that were made based on several layers of**

18     **inadmissible hearsay in violation of the Supreme Court's rulings in <u>Crawford v. Washington</u>, 541 U.S. 36 (2004) and Federal Rule of Evidence, Rule 803(8).**

19

20       There is no evidence to support the allegation of illegal reentry thus the writ should

21 be granted and the prisoner should be released. *Assuming arguendo* the Defendant in the

22 Complaint/OSC is the same person as the one written about by the Probation Office in

23 Oregon, he has already been acquitted of having reentered the country illegally. Thus the

24 accusation was rejected at trial. Accordingly, the present allegations, all of which are

25 based on an illegal reentry, cannot stand.

26       **i. The accusations are based on unlawful hearsay in violation of <u>Crawford</u>**

27       For one, the Supreme Court has prohibited the use of un-crossed examined

28 testimony to be used against a defendant. <u>Crawford v. Washington</u>, 541 U.S. 36 (2004).

1    Here, the Probation Office provides a sworn statement that the defendant may have

2    committed violations of his Supervised Release conditions.  The alleged violations as

3    stated in the OSC in pertinent part are as follows:

4            **Violation of Standard conditions No. 2 and Violation of Special**
        **Conditions - new law violation - Illegal Reentry and failure to obtain**

5            **prior approval for reentry from the Department of Homeland Security**
        **and to give prior notice of reentry to the U.S. Attorney and the U.S.**

6            **Probation Officer.**  On December 9, 2005, border patrol agents located
        Olivares lying on the ground one half mile north of the United

7            States/Mexican International border.  Olivares admitted to agents that he
        was a citizen and national of Mexico and that he did not possess

8            immigration documents allowing him to enter or remain in the United
        States.  Records subsequently showed that Olivares had an immigration and

9            criminal record.
        Records of the Department of Homeland Security reveal that the

10           defendant was last deported to Mexico on December 8, 2005, through San
        Ysidro, California.  These records showed that Olivares failed to apply for,

11           nor received permission from the Attorney General of the United States or
        the Secretary of the Department of Homeland Security to return to the

12           United States after being removed.  Olivares was indicted in the United
        States District Court for the Southern District of California, using the alias

13           Ruben Rodriguez, in case #06CR0057W. T his is a class C felony and
        would be considered a grade B violation for revocation purposes.... **Exhibit**

14           **2.**

15

16       These allegations are based on statements allegedly made by Border Patrol

17   statements in a separate Complaint.  Both layers of hearsay cannot be used against the

18   defendant because they are based on statements that are hearsay and were never

19   previously cross-examined by the defendant.

20       The first layer of hearsay, from the Border Patrol, is unlawful, thereby rendering the

21   accusation by the probation officer unlawful.  With regard to the Border Patrol's

22   statements, The Supreme Court says this is "testimony" that cannot be used against an

23   accused:

24           Various formulations of this core class of "testimonial" statements
        exist: "*ex parte* in court testimony [such as a Complaint or request for an

25           OSC] or its functional equivalent – that is, material such as affidavits,
        custodial examinations, prior testimony that the defendant was unable to

26           cross examine, *or similar pretrial statements that declarants would*
        *reasonably expect to be used prosecutorially* Id.

27

28       The Probation Officer and the Border Patrol Officers' statements are hearsay that
    were never cross-examined prior to the allegations being made.  Thus they cannot be used

1  against the defendant and the OSC should be dismissed.

2      The policy behind this is:

3          Involvement of government officers in the production of testimony
       with an eye toward trial presents unique potential for prosecutorial abuse – a
4      fact borne out time and again throughout a history with which the Framers
       were keenly familiar. This consideration does not evaporate when
5      testimony happens to fall within some broad, modern hearsay exception,
       even if that exception might be justifiable in other circumstances. Id. at 56.
6

7      ii. The statements are not permitted to be used against a criminal defendant
       pursuant to Federal Rule of Evidence, rule 803(8)
8

9      Likewise, rule 803(8) of the Federal Rules of Evidence prohibits the Probation

10 Officer's allegations. Her allegations are hearsay, which have never been cross-examined

11 by the accused. In turn, the allegations are based on hearsay statements of Border Patrol

12 officers, the equivalent of police officers. The use of such statements used in the criminal

13 context is prohibited:

14          Rule 803. Hearsay Exceptions; Availability of Declarant

15      Immaterial:...

16          (8) Public records and reports. Records, reports, statements, or data
       compilations, in any form, of public offices or agencies, setting forth (A) the
17      activities of the office or agency, or (B) matters observed pursuant to duty
       imposed by law as to which matters there was a duty to report, excluding
18      however, in criminal cases matters observed by police officers and other law
       enforcement personnel.... (italics added)
19

20      Thus, because the Complaint and any accompanying OSC are based on multiple

21 levels of hearsay, none of which were ever cross-examined prior to the charge being

22 made, are unreliable testimonial statements that cannot be used against an accused ina

23 criminal proceeding.

24      The second level of hearsay, i.e. the Border Patrols' statements, in and of itself

25 makes the OSC legally unsound. The fact that the OSC is based on a "police report"

26 makes it additionally unsound.

27      iii. The doctrine of res judicata prevents the use of these allegations to be used
       against the defendant for a second time as they have already been decided in his
28      favor in a previous suit

7

1     The fact that the testimony of the Border Patrol was rejected at trial, makes it void

2  altogether.  The matter has been decided on the merits, with a decision that finally

3  resolved the parties' claims, the effect being *res judicata*.  Accordingly, the Government

4  and the courts must be collaterally estopped from continuing to levy these allegations at

5  the defendant. <u>Teti v. Bender</u>, 2007 U.S. App. LEXIS 25996; <u>Sellan v. Kuhlman</u>, 261 F.3d

6  303, 311 (2d Cir. 2001).

7     The doctrine of *res judicata* bars litigation of claims that have either been litigated

8  or that should have been raised in an earlier suit.  For a prior judgment to bar an action on

9  the basis of *res judicata*, the parties must be identical.  Furthermore, the prior judgment

10 must have been rendered by a court of competent jurisdiction, there must have been a final

11 judgment on the merits, and the same cause of action must be involved in both cases *i.e.*,

12 both actions (the OSC and the trial) arise out of the same operative facts.  <u>Carter v.</u>

13 <u>Nicholson</u>, 2007 U.S. App. LEXIS 25998.

14    *Res judicata* prohibits either party from raising any claim or defense in the later

15 action that could have been brought in the support of or in opposition to the case of action

16 asserted in the prior action.  <u>Griggs v. United States</u>, 2007 U.S. App. LEXIS 26212.

17    <u>Blacks' Law Dictionary</u>, Abridged Sixth Edition, West Publishing, 1991, defines

18 *res judicata*:

19        A matter adjudged: a thing judicially acted upon or decided; a thing
          or matter settled by judgment, rule that a final judgment rendered by a court
20        of competent jurisdiction on the merits is inconclusive as to the rights of the
          parties and their privies, and, as to them, constitutes an absolute bar to a
21        subsequent action involving he same claim, demand or cause of action.  And
          to be applicable, requires identity in thing sed for as well as identity of
22        cause of action, of persons and parties to action, and of quality of persons
          for or against whom claim is made. The sum and substance of the whole
23        rule is that a matter once judicially decided is finally decided.

24

25    Here, the parties are identical.  The plaintiff, the government, lost at trial on

26 September 18, 2007.  The next day, September 19, 2007, the government filed a complaint

27 against the defendant alleging the OSC, which contains the same cause of action from

28 which there was a final judgment on the merits in a court of competent jurisdiction.

      The test of determining whether two suits involve the same course of action is the

1  transactional test as set forth in the Restatement (Second) of Judgments). <u>Carter v.</u>

2  <u>Nicholson</u>, 2007 U.S. App. LEXIS 25998; <u>Petro-Hunt, LLC v. United States</u>, 365 F.3d

3  385, 396 (5th Cir. 2007).  What factual group constitutes a 'transaction' and what

4  groupings constitute a 'series' are to be determined pragmatically, giving wieght to such

5  conditions as whether the facts are related in time, space, origin or motivation whether

6  they form a convenient trial unit, and whether their treatment as a unit conforms to the

7  parties' expectations or business understandings or usage. <u>Id.</u> Section 24 (2).

8         "The critical issue is whether the two actions under consideration are based on the

9

10  the same nucleus of operative facts." <u>Petro-Hunt, LLC v. United States</u>, 365 F.3d 385, 396

11  (5th Cir. 2007).

12         Here, the critical nucleus of facts that was relied on in the trial and the

13  Oregon OSC are the same, as the OSC alleges, that Border Patrol agents report having

14  found a person at the border east of the Otay Mesa Port of Entry.  These facts were

15  adjudicated in favor of the defendant on September 18, 2007.  Thus the Complaint and

16  OSC filed in the same court of competent jurisdiction on September 19, 2007 should

17  never have been filed.  Accordingly, the Complaint and OSC must be dismissed and the

18  defendant should be set free.

19
    B.    The Writ must be granted because the Superised Release statute is unconstitutional
20        on its face and as applied and causes a defendant to be placed into custody in
          violation of the Constitution of the United States
21        In this District, the Government repeatedly relies upon <u>United States v. Huerta-</u>

22  <u>Pimental</u> 445 F.3d 1220 (9th Cir. 2006) to justify the routine violation of Supervised

23  Releasees' rights during revocation proceedings.   In doing so, the Government repeatedly

24  ignores the Supreme Court's firmly established precedent, that is now infamous in the

25  world of criminal law, starting with  <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000), <u>Ring</u>

26  <u>v. Arizona</u>, 536 U.S. 584, 610 (2002) followed by <u>Blakely v. Washington</u>, 542 U.S. 296

27  (2004), <u>United States v. Booker</u>, 543 U.S. 220 (2005) and confirmed, *once again*, most

28  recently, in <u>Cunningham v. California</u>, 127 S.Ct. 856 (2007).

1    Each of those cases repeatedly advise all of us of a defendant's basic rights

2 including the right to have evidence against a defendant proven to a jury, beyond a

3 reasonable doubt.

4    The Government insists, using various arguments, that the holding in these cases

5 from the Supreme Court are of no import or relevance to Supervised Release hearings, and

6 the Government continues to defy the most basic Constitutional principles, in particular,

7 that "every defendant has the right to insist that the prosecutor prove to a jury all facts

8 legally essential to the punishment." Blakely v. Washington, 542 U.S. 296, 313 (2004).

9    The Government insists that United States v. Huerta-Pimental governs instead:

10        Because Supervised Release is part of the sentence authorized by the
          fact of conviction and requires no judicial fact-finding, it does not violate
11        the Sixth Amendment principles recognized by Apprendi and Blakely.  For
          the same reasons, a District Court's decision to revoke Supervised Release
12        and impose associated penalties is also Constitutional.  Additionally,
          because the revocation of Supervised Release and imposition of an
13        additional term of imprisonment is discretionary, it does not violate Booker.
          United States v. Huerta-Pimental, supra, at 1221; Gov't Brief, 9.
14
     First of all, the reasoning in Huerta-Pimental is illogical:  Supervised Release
15
   hearings always include judicial fact-finding, either through evidence presented by the
16
   Government or the Probation Office or by admissions from the Defendant.  There is no
17
   jury, ever, at a Supervised Release hearing.  The Judge of the District Court is the only
18
   entity finding facts, years after any jury may have heard the case.  This is completely
19
   contrary to the Supreme Court's precedent, the law of the land:
20
     In Apprendi and Blakely, the Supreme Court reiterated the Sixth Amendment
21
   requires any fact, other than a fact of a prior conviction, that increases the penalty for a
22
   crime beyond the prescribed statutory maximum, be submitted to a jury and proven
23
   beyond a reasonable doubt, unless such facts are admitted by a Defendant or found by a
24
   judge following a Defendant's knowing and voluntary waiver. Cunningham v. California,
25
   127 S.Ct. 856 (2007); Apprendi v. New Jersey, 530 U.S. 466, 470 (2000);  Blakely v.
26
   Washington, 542 U.S. 296, 303, 309 (2004).
27
     Most recently, the Court reiterated this rule in Cunningham v. California, where it
28
   reversed the sentence of a man in California convicted by jury of sexually abusing a child.

1  Under the Determinate Sentencing Law of California, Cunningham could receive six, ten
2  or sixteen years. *The Court held the upper term sentence that was given to Cunningham*
3  *was illegal because it was based on six additional findings of fact by the sentencing judge*
4  *that the jury never found.*

5    The same violation occurred in <u>Blakely</u>, where the statutory maximum in that case
6  was ten years, the Supreme Court held that "relevant statutory" maximum sentence in that
7  case, without additional jury findings of fact, was 53 months. The Court *held again that*
8  *the sentencing judge could not impose a sentence outside of this range unless a jury found*
9  *an additional fact.*

10    The Court relied *again* on <u>Booker</u>, *supra*, reiterating the unlawfulness of the
11  District Court's sentence which went above the sentencing range allowed by the jury, of
12  210-262 months. The sentencing judge's one finding of a fact that caused the sentence to
13  be greater than that range was deemed illegal because it was based on a judicial finding of
14  fact using the preponderance of the evidence standard of proof, all of which, the
15  <u>Cunningham</u> Court concluded, violates <u>Apprendi.</u>

16    In this case, as is typical in Supervised Release proceedings, the intent of the
17  District Court, is to "find" new facts, *i.e.*, that the Defendant had illegally reentered the
18  United States and failed to contact DHS, U.S. Probation or the U.S. Attorney. If these
19  facts are found, they will be found by someone other than a 12-person jury, and they will
20  be found at a lower standard of proof. If this occurs, the defendant is facing a higher
21  prison sentence based on facts that were never found or admitted by the defendant, and
22  certainly not beyond a reasonable doubt, which the Supreme Court commands.

23    This process, the Supervised Release revocation proceeding, which is a mere
24  consideration of sentencing factors to be considered under 18 USC section 3583 makes
25  findings by reviewing court records, police reports and/or testimony, using a
26  preponderance of the evidence standard. This is just wrong. As Justice Scalia has said in
27  his concurrence in <u>Ring v. Arizona</u>, 536 U.S. 584, 610 (2002):

28
    *[T]he fundamental meaning of the jury-trial guarantee " "is that all*

*facts essential to the imposition of the level of punishment that the defendant receives – whether the statute calls them elements of the offense, sentencing factors, or Mary Jane – must be found by the jury beyond a reasonable doubt*. *And see:* Celestine Faulks v. United States, On Petition for a Writ of Certiorari to the United States Court of Appeals for the Fourth Circuit, No. 06-999, p.5(italics added).

**C.    Revocation of Supervised Release and any prison term assigned to such revocation would violate the Fifth Amendment's guarantees to have the charges presented to the grand and petit juries and the right to be free from being subjected to the same offense and to be put in jeopardy of life or limb two times.**

No person shall ... be subject for the offence to be twice put in jeopardy of life or limb, nor shall be ...deprived of life, liberty, property, without due process of law. U.S. Const., Amend. V.

In all criminal prosecutions, the accused shall enjoy the right to a speedy trial and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law... U.S. Const., Amend. VI.

i. The defendant has already been tried and acquitted of the same  conduct found within the OSC

The OSC is alleging a new crime.  It was never presented to the District Court in Oregon in 2003, nor was it presented to a grand jury or a trial jury in 2003.  There is nothing in the record from that case showing anything about conduct that was to occur two years later, in Southern California.

The 2005 alleged crime in Southern California was never presented to the Oregon Court in 2003 .  Nor did the defendant in the Oregon case ever admit to any of the 2005 facts that are currently being alleged by the Probation Officer.   Thus, it is unconstitutional to subject the defendant to any additional prison term.

ii.  The Double Jeopardy Clause prohibits multiple punishments and prosecutions

Furthermore, assuming the person before this Court is the same person alleged in the OSC, this Court is not permitted to sentence him for conduct for which he has already been tried and sentenced.  To do so would violate the guarantee to be free from multiple prosecutions and sentences for the same offense. U.S. Const., Amendt. V.  The Supreme Court has made this clear:

*[The Double Jeopardy Clause] protects against a second prosecution for the same offense after acquittal.  It protects against a second*

> *prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense.*" Grady v. Corbin, 495 U.S. 508, 516 (1990), overruled on other grounds, 509 U.S. 688 (1993)(italics added); North Carolina Et Al. v. Pearce, 395 U.S. 711 (1969).

Thus the OSC in this matter offends each of these three Double Jeopardy protections.

For one, the defendant has been acquitted of illegal reentry.

Secondly, by pursuing revocation proceedings against the defendant *for the same exact conduct* by which he was tried before Judge Whelan where he was acquitted, the defendant is being prosecuted two separate times for the same offense, which means he will be sentenced *two separate times for the same conduct*. And, if the Supervised Release is revoked, and if the defendant receives a custodial sentence, he will have been punished "multiple times" for his original sentence from 2003.

The government may argue that a revocation proceeding is not a new prosecution or even a criminal proceeding. To say such is a mistake; the revocation proceedings here are another attempt by the government to prosecute the defendant. (The timing of the Complaint proves this alone, having been filed one day after the acquittal). United States v. Mejia-Sanches, 172 F.3d 1172, 1175 (9th Cir. 1999).

Notably, Due Process is guaranteed in revocation proceedings. 18 USC section 3583(e); Morrissey v. Brewer, 408 U.S. 471 (1972). This Court routinely advises Supervised Releasees that revocation proceedings provide a defendant with counsel, and the right to have a hearing, which is like a trial in that it guarantees the right to counsel at the proceeding, the right for the defendant to present evidence and witnesses on his or her behalf and the right to cross examine adverse witnesses. In addition, the defendant has a Fifth Amendment right to testify on her own behalf, or to choose not to do so.

Whether one views the OSC as a continuation of a criminal proceeding in Oregon in 2003 or as a brand new prosecution, there is no way to say this is not now a criminal proceeding.

iii.    The failure to abide the Bill of Rights' mandate that all criminal charges against the accused are to be proven against him to a jury beyond a reasonable

13

doubt results in a violation of the Defendant's Fifth (and Sixth) Amendment rights, making Title 18 USC section 3583 unconstitutional on its face and as applied

All defendants are entitled to Due Process. Also, as a defendant, one is entitled to have a charge against him proven to a jury beyond a reasonable doubt. While Title 18 section 3583 allows revocation proceedings to be based on a lower standard of evidence, without a jury, the defendant respectfully objects to these procedures *on their face* and *as applied* and used against him in the revocation proceedings that are to be conducted in this Court. U.S. Const, Amends. V and VI; <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000), <u>Ring v. Arizona</u>, 536 U.S. 584, 610 (2002); <u>Blakely v. Washington</u>, 542 U.S. 296 (2004), <u>United States v. Booker</u>, 543 U.S. 220 (2005) and <u>Cunningham v. California</u>, 127 S.Ct. 856 (2007).

Section 3583 of Title 18 which governs supervised release and revocation proceedings conflicts with the Double Jeopardy Claus as well as the right to due process, the right to be tried by a jury and the right to have charges brought to a grand jury and then proven to a trial jury beyond a reasonable doubt.

> The distinction that the court during the same term may amend a sentence so as to increase it, is not based upon the ground that the court has lost control of the judgment in the latter case, but upon the ground that to increase the penalty is to subject the defendant to double punishment for the same offense in violation of the Fifth Amendment to the Constitution.... This is the basis of the decision in *Ex parte Lange*, supra....<u>North Carolina Et. Al v. Pearce</u>, 395 U.S. 711, 731 (1969).

> If in civil cases, says Drake, J., in State v. Cooper, n9 the law abhors a multiplicity of suits, it is yet more watchful in criminal cases that the crown shall not oppress the subject, or the government the citizen, by unreasonable prosecutions. <u>Ex Parte Lange</u>, 85 U.S. 163 (1874).

Explaining more fully, the Supreme Court has said, repeatedly,

> The ban on double jeopardy has its roots deep in the history of occidental jurisprudence. "Fear and abhorrence of governmental power to try people twice for the same conduct is one of the oldest ideas found in western civilization." *Barkas v. Illinois*, 359 U.S. 121, 151-155 (BLACK, J., dissenting). And its purposes are several. It prevents the State from using its criminal processes as an instrument of harassment to wear the accused out by a multitude of cases with accumulated trials. <u>Abbate v. United</u>

14

<u>States, 359 US 187</u>

It serves the additional purpose of precluding the State, following *acquittal*, from successfully retrying the defendant in the hope of securing a conviction. "The vice of this procedure lies in relitigating the same issue on the same evidence before two different juries with a man's innocence or guilt at stake" " in the hope that they would come to a different conclusion." *Hoag v.New Jersey*, 356 U.S. 464, 474, 475 (WARREN, C.J., dissenting). "Harassment of an accused by successive prosecutions or declaration of a mistrial so as to afford the prosecution a more favorable opportunity to convict are examples when jeopardy attaches." *Downman v. United States,* 372 U.S. 732, 736.

"This case presents an instance of the prosecution being allowed to harass the accused with repeated trials and convictions on the same evidence, until it achieves its desired result of a capital verdict." *Ciucci v. Illinois*, 356 U.S. 571, 573 (DOUGLAS, J. dissenting).

.... But the individual has an interest in remaining free of double punishment. And in weighing those interests against one another, the Constitution has decided the matter in favor of the individual. See United States v. Tateo, 377 U.S. 463, 475 (Goldberg, J., dissenting). <u>North Carolina Et Al. V. Pearce</u>, 395 U.S. 611, 736-737 (1969)(italics added).

Accordingly, the OSC must be dismissed.

**D.    In the alternative, the revocation proceedings also violate the Separation of Powers Doctrine by permitting the Court to act as the Prosecutor and the Custodian of the Supervised Releasee, as well as the defendant's rights to have a charged presented to a jury and proven to that jury beyond a reasonable doubt, all in violation of the defendant's Due Process rights and the Separation of Powers Doctrine**

To characterize Revocation proceedings as a "non-criminal" proceeding or a "breach of trust" does not cancel out the double jeopardy and the due process violations – indeed, the process amounts to a violation of the Separation of Powers Doctrine.

It is an archaic notion to conclude these are not criminal proceedings. These proceedings would not even occur if no criminal information, complaint or indictment was never filed against the defendant. Moreover, the mere fact that the defendant may be imprisoned is the best evidence that this is indeed a criminal proceeding against the defendant. Section 3583(e)(3), which governs revocations of Supervised Release proceedings, mandates that the Court utilize the "Federal Rules of Criminal Procedure" before one is sent back to prison.

1    Nor is a revocation proceeding simply a breach of trust between the Court and the
2  defendant. This is a contract term frequently used to justify imprisoning a Supervised
3  Releasee after he or she has already served his sentence. However, there is no agreement
4  between the Court and the defendant. At sentencing, a defendant is never asked if he or
5  she wants to decide whether to spend time in prison or be released knowing that the Court
6  might revoke the release and place him or her back in prison. Rather, the conditions of
7  Supervision are imposed on the defendant, by a unilateral act committed by the Court.

8    There is no contract between the defendant and the Court as there is with a parolee who
9  can opt to go to prison *in lieu* of being released on parole. *See, generally*, United States v.
10  Crawford, 372 F.3d 1048, 1062-1075(Trott, J., concurring). United States v. Knights, 534
11  U.S. 151 (2001)(California probationer signed a waiver of his rights for his probationary
12  period). *Same*, Griffin v. Wisconsin, 483 U.S. 868 (1987).

13    Instead, in the federal system, where a defendant is placed on Supervised Release,
14  he or she is told that he or she must comply with the Court, even though the conviction
15  was final at the time of the original sentencing. By unilaterally imposing conditions of
16  release, the Court retains power, or, jurisdiction, over a defendant well after the sentence is
17  imposed. This is unconstitutional because the system essentially places the defendant in a
18  constant, on-going, years-long sentencing process.

19    This prosecution is also unconstitutional because the defendant *is in the custody of*
20  *the Court*, which is prohibited by the Constitution which designates the Executive Branch
21  as the one to maintain custody of prisoners. Unlike California parolees, who are under the
22  legal custody of the Department of Corrections, Supervised Releasees are not under the
23  legal custody of the Department of Justice or the Attorney General or any other lawful
24  entity, much less the Court. Id. at 1063. United States v. Knights, 534 U.S. 112 (2001)
25  "Under California law, a parolee is in fact in the custody of the Department of
26  Corrections."

27    Supervised releasees never agree to multiple prosecutions for the same offense nor
28  do they agree to remain in the custody of the Court. Instead, they are forced to do so.

1    The government may assert this is not a criminal proceeding and that it is not the

2 entity that is prosecuting the defendant for the Supervised Release allegation.  This is may

3 be true, as the Probation Office is responsible for reporting violations of Supervised

4 Release and the Court presides as the judge and jury, using an illegal preponderance of the

5 evidence standard.  <u>United States v. Mejia-Sanchez</u>, 172 F.3d 1172 (9th Cir. 1999)( "the

6 sentencing court, not the probation officer, ultimately determines whether revocation

7 proceedings will be initiated).

8    However, the government is required to put on proof for the judge who is the trier of

9 fact in revocation proceedings, as the Assistant United States Attorney in this case has

10 indicated he will do (revocation hearing, scheduled for November 15, 2007).  If the

11 government continues to take the position that it is not "prosecuting" the defendant in

12 revocation proceedings, then, as the Ninth Circuit has said, it is the Court that initiates the

13 proceedings and presides as the judge and jury and the prosecutor, by having the Probation

14 Officer providing the proof.

15    Either way, no matter who is conducting the proceeding, it is constitutionally

16 flawed.

17    Assuming revocation is the sole responsibility of the Court, the proceedings are

18 constitutionally flawed for the reason that the  proceeding, whatever it is called, revocation

19 or otherwise, *is an unlawful continuum of the original sentence from 2003.*

20        If there is anything settled in the jurisprudence of England and
21    America, it is that no man can be twice lawfully punished for the same
     offense....
22        In the criminal law the same principle, more directly applicable to the
     case before us, is expressed in the Latin, "Nemo debet bis puniri pro uno
23    delicto." N6 Noone can be twice punished for the same crime or
     misdemeanor, is the translation of the maxim by Sergeant Hawkins. <u>Ex
24    Parte Lange</u>, 85 U.S. 163 (1874)

25    Secondly, as explained above, the District Court has no jurisdiction to prosecute

26 defendant in this matter, or any other individual: as the Court well knows, the Sixth

27 Amendment guarantees that it is the sovereign of the State or the Executive Branch that is

28 responsible for prosecuting an accused.  "At its core, the Judiciary's constitutional

function is the impartial, independent, and final adjudication of disputes within the

1  jurisdiction of the courts. U.S. Const. Ast III; *see also Plaut v. Spendthrift Farm, Inc*. U.S.,

2  115 S.Ct. 1447, 1452...(1995)." <u>United States v. Rojas, et al.</u>, 53 F.3d 1212, 1214 (11th Cir.

3  1995).  Obviously, the District Court has no power to prosecute the person here before the

4  Court.  U.S. Const., Article III.  "The Constitution's division of power among the three

5  branches is violated where one Branch invades the territory of another..." <u>New York v.</u>

6  <u>United States</u>, 505 U.S. 144 (1992).

7        In other words, if the Court is to defend its position by saying it is not punishing the

8  defendant for the same conduct which put him before the Court in the first place, but it is

9  punishing the defendant for new conduct, the Court is admitting that it is prosecuting the

10  defendant for a new and separate crime, whether it be possession or use of drugs, or for

11  any new offense that occurred *after* the original conduct that caused the defendant to be

12  hailed into the Court in the first place.  But this is not the role of the Court, to initiate

13  prosecutions.  That is the sole responsibility of the government, the legislative branch.

14        A third Constitutional violation that occurs as a result of revocation proceedings is a

15  Due Process violation.  By hauling someone back into Court, months or years after the

16  sentence was imposed, and in almost all cases, months or years after the sentence has been

17  served, is a violation of one's Due Process rights.  A defendant has the right to finality and

18  repose.  The sentence is done once and for all when the Court hands it down at the original

19  sentencing hearing.  *The Court violates a defendant's rights by returning him to Court and*

20  *refashioning his sentence, over and over for any other unlawful conduct that was not even*

21  *in existence at the time of the original crime or the original sentence.*

22  **E.    He writ should be granted because the Government delayed too long before**
        **bringing these proceedings against he defendant, in violation of the Speedy**
23      **trial Act, the Sixth Amendment's right to a Speedy Trial and the Fifth**
        **Amendment's right to a speedy trial and due process and Rule 48 of the**
24      **Federal Rules of Criminal Procedure**

25        The Sixth Amendment of the United States Constitution states in clear language:

26        In all criminal prosecutions, the accused shall enjoy the right to a speedy and public

27  trial....

28        The Fifth Amendment commands that a defendant is entitled to Due Process which

18

1  includes a reasonable time period within which to prosecute an defendant.  The Speedy

2  Trial Act (18 USC section 3161)(a) states that

> In any case involving a defendant charged with an offense, the appropriate judicial officer, at the earliest practicable time, shall, after consultation with the counsel for the defendant and the attorney for the Government, set the case for trial on a day certain, or list it for trial on a weekly or other short-term trial calendat at a place within the judicial district, so as to assure a speedy trial.

Rule 48 of the Federal Rules of Criminal procedure states:

> (a) The Attorney General or the United States Attorney may by leave of court file a dismissal or an indictment, information or complaint and the prosecution shall thereupon terminate.  Such a dismissal may not be filed during the trial without the consent of the defendant.
> (b) If there is unnecessary delay on presenting the charge to the grand jury or in filing an information against a defendant who has been held to answer to the district court, or if there is unnecessary delay in bringing the defendant to trial, the court may dismiss the indictment, information or complaint.

13  Rule 48(b) is a restatement of the inherent power of the court to dismiss a case

14  simply for lack of prosecution. <u>United States v. Hattrup</u>, 763 F.2d 376, 377 (9th Cir. 1985),

15  even when there is no Sixth Amendment violation. <u>United States v. DeLuna</u>, 763 F.2d

16  897, 923 ( 8th Cir. 1985), *overruled on other grounds*, <u>United states v. Gardner</u>,  447 F.3d

17  558 (8th Cir. 2006).  The defendant is prejudiced by the delay in fling of this Complaint as

18  the government has had ample time and opportunity to pursue the matter, nearly two years,

19  all of which time the defendant has been in custody.

20  Here, the delay is inexcusable.  The defendant was arrested on charges of Being an

21  Illegal Alien Found Within the United States on December, 2005.  The Complaint was not

22  filed until September 19, 2007, the day after the acquittal on the same allegations.    There

23  is no excuse for this delay.  The timing suggests vindictive prosecution or poor

24  sportsmanship for the loss at trial when the government could have brought this complaint

25  over a year ago and where these facts have already been litigated resulting in the

26  defendant's favor.  The timing shows the government is trying to keep a defendant in

27  custody despite the fact that he was found not guilty. Id., Const. Amend. V; and see;

28  <u>Doggett v United States</u>, 505 U.S. 647 (1992).  The Sixth Amendment's guarantee of a

1  speedy trial is "desigend to minimize the possibility of lengthy incarceration prior to trial,

2  to reduce the lesser, but nevertheless substantial, impairment of liberty imposed on an

3  accused while released on bail, and to shorten the disruption of life caused by arrest and

4  the presence of unresolved criminal charges." United States v. McDonald, 456 U.S. 1, 6

5  (1982).

6        Using a Sixth Amendment right to a speedy trial does analysis, the defendant need

7  not even show actual prejudice. Doggett v. United States, *supra*, 655-656.  Instead, there is

8  a four-part inquiry: 1.  Whether the delay before trial was too long; 2. Whether the

9  government or the criminal defendant is more to blame for the delay; 3. Whether, in due

10 course, the defendant asserted his right to a speedy trial and 4. Whether he suffered

11 prejudice as a result of the delay.

12       Here, the government is to blame for not bringing this charge to life sooner, and the

13 defendant is suffering as he is now been in custody for acquitted conduct, which is the

14 same conduct as in the current charges, for nearly two years.   The government brought the

15 charges, therefore the government is responsible for seeing them pursued.  The

16 government sat on these allegations and now the government just looks like it is taking the

17 defendant from one district to another in its second attempt to convict the defendant,

18 despite the Due Proces Clause, the Speedy Trial Clause and the Double Jeopardy Clause.

19       Accordingly, the defendant asks the Court to grant the writ to rectify all of these

20 statutpry and Constitutional violations that are causing the defendant to remain in custody.

21

22 **F.    The defendant respectfully asks the Court to Dismiss the Order to Show Cause
     Because Imposition of Supervised Release Is Unconstitutional and Revocation
     Proceedings are Unconstitutional**

23

24       Interpretations of statutes and their Constitutionality are reviewed *de novo*.

25 United States v. Hicks, 103 F.3d 837, 847 (9th cir. 1997);  United States v. James, 109

26 F.3d 597, 599 (9th Cir. 1997); United States v. Pena-Carrillo, 46 F.3d 879, 883 (9th Cir.

27 1995).        Legal requirements of Rules of Criminal Procedure are also reviewed *de

   novo*. United States v. Carper, 24 F.3d 1157, 1158-59 (9th Cir. 1994).  Application of legal

28 facts to standards are also reviewed *de novo*. United States v. Turner, 926 F.2d 883, 887

1 (9th Cir. 1991).

2      The defendant moves this Court to dismiss the underlying Order to Show Cause
3 because the revocation procedures are inconsistent with the Sixth and Fifth Amendment.  In
4 United States v. Liero, 298 F.3d 1175 (9th Cir. 2002) the Ninth Circuit  held that Supervised
5 Release is considered part of the original sentence.  Since Supervised Release is part of the
6 punishment for the original crime, that must mean that it is equally subject to the Sixth
7 Amendment's requirement that any factual finding that results in incarceration is subject to
8 the strictures of the Sixth Amendment.  In revocation hearings, the District Court makes
9 factual findings by a preponderance of the evidence which results in increased incarceration,
10 which is precisely what Blakely and Booker prohibit.  The Fifth Amendment's right to Due
11 Process, which was also not raised in Booker or Liero, is also violated by the Supervised
12 Release statutes and their application.

13                     i.          **The law after Booker**

14      The Supreme Court's decision in United States v. Booker, 125 S.Ct. 738 (2005),
15 contains two primary holdings: first, that the Apprendi line of cases applies to the Sentencing
16 Reform Act of 1984 [ hereinafter "SRA"], and second, that the remedy for the constitutional
17 defects in the process by which sentences are imposed can be cured by severing two
18 provisions from the SRA, 18 USC section 3553(b)(1), which made the Sentencing Guidelines
19 mandatory, and 18 USC section 3742(e) which set forth standards of review on appeals from
20 sentencing decisions under the mandatory regime.

21      In the latter holding, the so-called remedial majority rejected the notion that the
22 constitutional defects in the SRA could be cured by re-casting the Guideline system as one
23 in which defendants enjoyed the rights guaranteed by the Apprendi line of cases — i.e.,
24 presentation to the grand jury, proof beyond a reasonable doubt and jury trial — as contrary
25 to Congressional intent.  The remedial majority was not required to strike down the SRA,
26 however, because it contained an alternative sentencing regime set forth in 18 USSC section
27 3553(a). The remedial majority held that sentencing pursuant to that Congressionally created
28 scheme was both consistent with Congressional intent and the proscription of judicial

1   legislation.

2       Neither of the two cases addressed in the <u>Booker</u> opinion involved issues concerning
3   the imposition or revocation of Supervised Release.  Even so, <u>Booker</u> is dispositive of the
4   defendant's challenge and the District Court should dismiss the Order to Show Cause.  That
5   is so for two reasons.  First, the <u>Apprendi</u> line of cases is equally applicable to the Supervised
6   Release regime because imprisonment for a Supervised Release violation necessarily requires
7   a finding of fact not considered by the trial jury: the alleged violation.  Second, the remedial
8   majority's holding that super-imposition of <u>Apprendi</u> protections covered over the SRA is not
9   consistent with Congressional intent is even more compelling in the context of Supervised
10  Release where the statutory scheme explicitly eschews <u>Apprendi</u> protections such as
11  presentation to a grand jury, proof beyond a reasonable doubt and right to a jury trial.  *See*:
12  18 USC section 3583(e)(3) ("the court" makes finding "by a preponderance of the evidence");
13  Fed. R. Crim. P. 32. 1(b)(1) (right to a preliminary hearing, not presentation to a Grand Jury),
14  (b)(2) (revocation hearing before "the court").

15      Under the remedial majority's reasoning, section 3583(e)(3) and Rule 32.1(b) must be
16  stricken and, unlike the situation posed by the alternative processes created by sections
17  3553(a) and (b), there is no alternative legislation in place to permit revocation hearings to
18  go forward. Because <u>United States v. Jackson</u>, 390 U.S. 570 (1968), prohibits this court from
19  implementing a new system of its own, section 3583(e)(3) cannot be constitutionally
20  implemented and must be struck down.

21      <u>Booker's</u> broad statement that Supervised Release is constitutional was not the central
22  point, or even an issue raised by the parties.  Supervised Release revocation was never
23  presented as an issue in <u>Booker</u> or in <u>Fan Fan</u>, and therefore its broad conclusion is mere dicta
24  and thus is not binding.  *See:* <u>Webster v. Fall</u>, 266 U.S. 507, 512 (1925).

25
26          **ii.  The Supervised Release regime violates <u>Apprendi</u> because the**
            **imposition of the maximum penalty depends upon a fact not found by the**
27          **jury and the Court cannot correct the Constitutional error in light of**
            **Congress' clear intent**

28      Supervised Release cannot survive <u>Booker</u> and <u>Apprendi</u> because imposition of the

1  maximum penalty depends upon a fact not found by the jury. <u>Booker</u> "reaffirm[ed the
2  Court's] holding in <u>Apprendi</u>: Any fact (other than a prior conviction) which is necessary to
3  support a sentence exceeding the maximum authorized by the facts established by a plea of
4  guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a
5  reasonable doubt." 125 S.Ct at 756. At the time of the Oregon defendant's guilty plea in 2003
6  before the District Court there, he was sentenced to 30 months in prison, plus three years of
7  Supervised Release.

8       However, there is no record the defendant ever admitted that he would attempt to re-
9  enter the country in the future, in November 2005.

10      Furthermore, the guilty plea did not establish the maximum period of time that the
11 defendant could serve <u>in prison</u> or on Supervised Release; the Oregon Court made that
12 determination without an admission that there would be a return at a future date and without
13 any other, without any standard of proof and without the benefit of indictment.  In other
14 words, the maximum amount of Supervised Release to be served <u>in prison</u>, is not determined
15 in compliance with <u>Booker</u> and <u>Apprendi</u>.

16      Supervised Release creates a sentencing regime unknown at common law, but that is
17 no impediment to applying <u>Apprendi</u>. <u>Cf.</u> <u>Booker</u>, 125 S.Ct. At 752 (the <u>Apprendi</u> line of
18 cases address "the issue of preserving an ancient guarantee under a new set of
19 circumstances"). Supervised Release is largely discretionary, imposed after consideration of
20 the same factors courts consider in imposing sentence as a whole.  *See*: <u>id.</u>, at 764-65
21 (requiring courts to impose sentence under 18 USC section 3553(a)); 18 USC section 3583(a),
22 (c) (requiring consideration of many of the same factors in imposing Supervised Release).

23      Upon a revocation of Supervised Release, the District Court is permitted to "require the
24 defendant to serve in prison all or part of the term of Supervised Release authorized by the
25 statute for the offense," 18 USC section 3583(e)(3), subject to certain maxima applicable to
26 the various "classes; of felonies. *See, e.g.,* <u>id.</u>, (maximum of five years for a Class A felony,
27 three years for a class B felony, etc.). *See also*: 18 USC section 3583(g) (making mandatory
28 in the case of violation certain conditions of Supervised Release). Thus, the maximum term

1 of Supervised Release to be served in prison is available only upon a finding of the revocation

2 fact, and Booker makes clear that any such fact is subject to the rule in Apprendi. *See:* 125

3 S.Ct. at 756.

4     Apprendi makes clear that the facts that determine the maximum punishment must be

5 established through the constitutionally adequate procedures. In federal court, that means

6 grand jury indictment, *see:* United States v. Cotton, 535 U.S. 625, 627 (2002), proof beyond

7 a reasonable doubt, *see* Booker, 125 S.Ct. at 748 (citing In re Winship, 397 U.S. 358, 364

8 (1970) and the right to jury trial. *See:* Id.

9     However, revocation of Supervised Release is accompanied by only minimal statutory

10 protections. There is no right to a grand jury indictment, instead, the defendant in a

11 revocation proceeding is entitled to only a preliminary hearing before a judge. 18 USC section

12 3583(e)(3)(incorporating the Federal Rules of Criminal Procedure); Fed. R. Crim. P. Rule

13 32.1(b)(1)(right to a preliminary hearing, nor presentation to a grand jury). Similarly, there

14 is neither a right to a jury determination nor the right to proof beyond a reasonable doubt. 18

15 USC section 3583(e)(3)("the court" makes findings "by a preponderance of the evidence");

16 Fed. R. Crim. P. Rule 32.1(b0(2)(revocation hearing before "the court"). The statutory

17 provisions governing Supervised Release thus violate Apprendi and Booker. "The Fifth

18 Amendment requires proof beyond a reasonable doubt, not by a preponderance, of any fact

19 that increases the sentence beyond what could have been lawfully imposed on the basis of

20 facts found by a jury or admitted by the defendant." Id., Thomas, J., dissenting.

21     Here, obviously, in 2003 there were no juries, grand or petit, finding any facts

22 suggesting the defendant was to commit a crime in 2005.

23     Pre-Apprendi cases sustaining *Probation* violation proceedings in the face of Sixth

24 Amendment challenges have no application here whatsoever, where we are considering

25 Supervised Release proceedings. *See, e.g.,* Gagnon v. Scarpelli, 411 U.S. 778 (1973).

26 Probation revocation, like the parole system to which Gagnon likened it, does not involve

27 imposition of a sentence beyond that authorized by a jury's verdict. Id. at 782. When

28 Probation is revoked, the District Court is instructed to impose a sentence "under subchapter

24

1 A". 18 USC section 3565(a)(2). *See also*: 18 USC section 3565(b)(revocation under

2 subsection (b), which addresses certain mandatory conditions of Probation, requires a

3 sentence "under subchpater A that includes a term of imprisonment.").

4      Subchapter A includes 18 USC sections 3551 through 3559, and sets forth, together

5 with the modifications imposed by Booker, the District Court's general sentencing power.

6 *See generally*, Booker, 125 S.Ct. at 764-65 (citing 18 USC section 3553(a)). Thus, arguably,

7 Probation revocation effectively returns the District Court to square one, and permits the court

8 to impose any sentence that it could have imposed on the day of the original sentencing.

9 United States v. Vasquez, 160 F.3d 1237, 1239(9th Cir. 1998)("the court [has] discretion to

10 sentence a probation violator to the range of sentences available at the time of the original

11 sentencing").

12      The difference between revocation of Probation and Supervised Release is stark and

13 constitutionally significant. The difference is that on the day the defendant was sentenced by

14 the Oregon Court, the Court already had the right to give him any sentence that the Court

15 could later give him based on a Probation revocation.

16      However, Supervised Release is different: a defendant cannot be forced to serve even

17 one day of a Supervised Release revocation term in prison on the day he is originally because

18 only a finding that he violated the conditions of his Supervised Release could justify that. As

19 a result, a Supervised Release revocation involves the finding of an additional fact or facts

20 and imposition of a penalty not authorized by the jury's verdict or the guilty plea, even though

21 the imposition of a term of Supervised Release may be. For that reason, Supervised Release

22 revocation violates Apprendi.

23      **iii. Both the Booker remedial majority and Jackson prevent the Court from "fixing" section 3583**

24

25      The defendant acknowledges that an Apprendi violation gets him only halfway

26 home; this Court must. As the remedial majority in Booker did, consider what, if anything,

27 can be done to remedy the violation. The Booker remedial majority considered three options:

28 recasting the SRA as system that complied with Apprendi by severing out portions of the

SRA. This was rejected and in doing so, the majority made clear that the "court's" action did

1    not include working with a jury. Booker, 125 S.Ct. At 758-759.

2    If anything, that inference is even more clear in the context of Supervised Release. *See:*

3    18 USC section 3583(e)(3) ("the court" makes findings); Fed. R. Crim. P. Rule 32.1(b)(1)

4    (preliminary hearing conducted by a judge, not presented to a grand jury), (b)(2)(hearing

5    before "the court"). Moreover, Congress' rejection of Booker's beyond a reasonable doubt

6    standard admits of no ambiguity. Booker, 125 S.Ct. At 748. Congress explicitly required

7    findings by a "preponderance of the evidence," 18 USC section 3583(e) *and no rule of*

8    *statutory construction could overcome such explicit language.*

9    In light of the lack of ambiguity, the remedial majority permits only one result:

10    "Without some such interpretation,..., this provision of the statute, along with those

11    inextricably connected to it, are constitutionally invalid, and fall outside of Congress' power

12    to enact." Id. Likewise, section 3583's Supervised Release revocation provisions are "outside

13    of Congress' power to enact," and must be struck down.

14    The Court cannot simply excise the revocation procedures because what would be "left

15    is [not] fully operative as a law.'" Alaska Airlines, Inc. v. Broack, 480 U.S. 678, 684 (1987).

16    There is no utility in a system that permits the imposition, but not revocation, of Supervised

17    Release. Furthermore, this court cannot fill the gap. Eng. v. Trinidad, 271 U.S. 500, 517-518

18    (1926).("it is very clear that amendment may not be substituted for construction, and that a

19    court may not exercise legislative functions to save the law from conflict with constitutional

20    limitation."). *See also*: United States v. Evans, 333 U.S. 483, 495 (1948)(refusing to supply

21    omitted penalty provision and reasoning that "[t]his is a task outside the bounds of judicial

22    interpretation. It is better for Congress, and more in accord with its function, to revise the

23    statute that for us to guess at what revision it would make."

24    The Supreme Court's decision in Jackson confirms this analysis. There, the Court

25    considered Fifth and Sixth Amendment challenges to a sentencing provision that authorized

26    the death penalty only upon a jury's recommendation. The Court held that the provision

27    constitutionally burdened the rights to proof beyond a reasonable doubt and to jury trial

28    because it did not authorize the death penalty upon a plea of guilty or trial to the court. Id.,

1  at 581-82.  In an effort to salvage the provision, the government proposed a number of

2  interpretations of the statute and cited ad hoc procedures developed by the district courts as

3  "cures" for the constitutional problems.  Jackson rejected each approach as requiring

4  legislative, not judicial action. Id., at 572, 581.

5       For example, the government proposed a "construction" of the statute under which

6  "even if the trial judge accepts a guilty plea or approves a jury waiver, the judge remains

7  free...to convene a special jury for the limited purpose of deciding whether to recommend the

8  death penalty." Id., at 572.  The Court rejected the government's creation because "it was not

9  in fact the scheme Congress had enacted."

10      Similarly, the Court rejected the government's request that it save the statute by reading

11  it to take imposition of the death penalty discretionary on the part of the sentencing judge.

12  Instead, the Court adhered to its construction of the statute which made the death penalty

13  mandatory on the jury's recommendation and explained that "[t]o accept the government's

14  suggestion that the jury's sentencing role be treated as merely advisory would return to the

15  judge the ultimate duty that Congress deliberately placed in other hands." Id., at 572-76.

16      Here, Jackson precludes the adoption of similar revisions of section 3583; the courts

17  cannot take away "the [judge's] role [in revocation proceedings]" and they cannot give "to

18  the [jury] the ultimate duty that Congress deliberately placed in other hands." Id.  Jackson

19  compels rejection of that approach.

20      The Court further explained that such judicial "procedure" crafting is "fraught with the

21  gravest difficulties" because it generates a proliferation of questions, leaving defendants

22  "without the guidance that [they] ordinarily find a body of procedural and evidentiary rules

23  spelled out in advance of trial." Id. at 579-80.  The many questions raised by the lower court's

24  willingness to undertake such "procedure" crafting have no answers because "Congress ... has

25  address itself to none of these questions." Jackson, 390 U.S. at 579.

26      In sum, the District Court should not have, and this Court cannot take sentencing under

27  section 3583 "in a new and uncharted direction, without the compulsion of a legislative

28  mandate and without the benefit of legislative guidance." Id., at 581.  The Supreme Court

1  "decline[d] to do" so in <u>Jackson</u> and instead struck down the unconstitutional sentencing

2  provision. <u>Id.</u> accord <u>Evans</u>, , 333 U.S. at 486-87.

3        <u>United States v. Buckland</u>, 289 F.3d 558 (9th Cir. 2002)(en banc), is not to the contrary.

4  There, the Ninth Circuit rejected a constitutional challenge to 21 USC section 841 by

5  concluding that section 841 is sufficiently ambiguous to permit application of the doctrine of

6  constitutional doubt. <u>Id.</u>, at 564-68.  In reaching that conclusion, <u>Buckland</u> relied solely on

7  the majority's view that sections 841 and 960 quantity by a preponderance of the evidence.

8  <u>Id.</u>, at 565.  <u>Buckland</u> found support for its view that the lack of an explicit statement as to

9  burden of proof and allocution between judge and jury was "dispositive," in the Seventh

10  Circuit's decision in <u>United States v. Brough</u>, 243 F.3d 1078 (9th Cir. 2001).

11        There is no ambiguity here.  Section 3583(e) and Rule 32.1 make clear that Congress

12  intended to create a revocation procedure that did not comply with <u>Apprendi</u>.  Thus, section

13  3583(e) and Rule 32.1 create a system that explicitly requires judicial fact-finding, denigrates

14  grand jury rights and uses a preponderance of the evidence standard.   The courts are

15  powerless to reject these Congressional choices. <u>Jackson</u>, 390 U.S. at 576.  In short, not even

16  <u>Buckland's</u> approach can permit the government and the courts to treat revocation facts as

17  second class elements.

        **iv. <u>Booker's</u> statements that Supervised Release is "perfectly valid" does not
remedy the Constitutional injury inherent in the Supervised Release regime**

18

19        <u>Booker</u> and <u>Fan Fan</u> were both cases granted review on petitions filed by the Solicitor

20  General.  Both raised issues concerning the sentences of imprisonment imposed on the

21  defendants; neither raised issues relative to Supervised Release.

22

23        Certainly the Solicitor General had no incentive to challenge the imposition of

24  Supervised Release.  The issue raised here was thus neither raised nor decided in <u>Booker</u>.

25  "Questions which merely lurk in the record , neither brought to the attention of the court nor

26  ruled upon are not to be considered as having been decided as to constitute precedent."

27  <u>Webster</u>, 266 U.S. at 512.  <u>Booker</u> does not control.

28        A constitutional challenge to the statute of "conviction" is a jurisdictional question, *see*
<u>Menna v. New York</u>, 423 U.S. 61, 63 n.2 (1975), and <u>Ex Parte Yarborough</u>, 110 U.S. 651, 654

1  (1884), and this court is obligated to consider its jurisdiction to imprison Mr. Torres at any

2  point in the proceedings. <u>Moe v. United States</u>, 326 F.3d 1065, 1070 (9th Cir. 2003). If

3  section 3583 is struck down, this court lacks jurisdiction. <u>Yarborough</u>, 100 U.S. at 654.

### III.

### <u>CONCLUSION</u>

Given the lack of probable cause to establish identity of the individual in the Complaint and the OSC and given the Constitutional flaws on the face of the Supervised Release statutes, and given the Constitutional flaws of these proceedings, as outlined above, the defendant respectfully asks this Court to dismiss the Order to Show Cause.

Respectfully submitted,

Dated:      November 24, 2007       **JOAN KERRY BADER**
964 Fifth Ave., Ste. 214
San Diego, California 92101
Attorney for Defendant

EXHIBIT 1

Arrest on Out-of-District Offense

# UNITED STATES DISTRICT COURT

07 SEP 20 PM 12: 22

## SOUTHERN DISTRICT OF CALIFORNIA

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

### ARREST ON OUT-OF-DISTRICT OFFENSE

BY _____ DEPUTY

'07 MJ 2274

Magistrate Case Number: _____

The person charged as OLIVARES, Jose Luis _____ now appears before this United States

District Court for an initial appearance as a result of the following charges having been filed in the United States

District Court for the _____ District of _____ Oregon _____

with   Supervised Release Violation _____, in

violation of   Title 18 Section 3583(e)(3) _____

_____

_____

The charging documents and the warrant of the arrest of the defendant which was issued by the above

United States District Court are attached hereto.

I hereby swear under penalty of perjury that the foregoing is true and correct to the best of my

knowledge, information and belief.

DATED: 9/20/07 _____.

_____

Van Bavless
(Name)
**Deputy United States Marshal**

Reviewed and Approved:

Dated: ___9/20/07_____

_____
**Assistant United States Attorney**

EXHIBIT 2

PROB 12C-OR
(07-07-05)

**UNITED STATES DISTRICT COURT**

for

**DISTRICT OF OREGON**

**PETITION FOR WARRANT
AND
ORDER TO SHOW CAUSE**

U.S.A. vs. JOSE LUIS OLVIARES (aka Ruben Rodriguez)

Docket No. CR 03-57-01-KI

Petition on Probation and Supervised Release

    COMES NOW RENÉ WORTHEY, PROBATION OFFICER OF THE COURT, presenting an official report upon the conduct and attitude of Jose Luis Olivares (aka Ruben Rodriguez), who was placed on supervision by The Honorable Garr M. King sitting in the court at Portland, Oregon, on the 28th day of April, 2003, who fixed the period of supervision at 3 years,* and imposed the general terms and conditions theretofore adopted by the court and also imposed special conditions and terms, including: If deported, the defendant shall not enter the United States without the approval of the Department of Homeland Security and without prior notification to the U.S. Attorney and the U.S. Probation Office for the District of Oregon. The defendant shall not commit any new federal, state, or local crimes.

*Term of supervised release commenced on November 10, 2005.

**RESPECTFULLY PRESENTING PETITION FOR ACTION OF COURT FOR CAUSE AS FOLLOWS:**
(If short insert here; if lengthy write on separate sheet and attach)

**Violation of Standard Condition No. 2 and Violation of Special Conditions**—New law violation - Illegal Reentry and failure to obtain prior approval for reentry from the Department of Homeland Security and to give prior notice of reentry to the U.S. Attorney and the U.S. Probation Officer. On December 9, 2005, border patrol agents located Olivares lying on the ground one-half mile north of the United States/Mexico International border. Olivares admitted to agents that he was a citizen and national of Mexico and that he did not possess immigration documents allowing him to enter or remain in the United States. Record checks subsequently showed that Olivares had an immigration and criminal record.

Records of the Department of Homeland Security reveal that the defendant was last deported to Mexico on December 8, 2005, through San Ysidro, California. These records also showed that Olivares failed to apply for, nor received permission from the Attorney General of the United States or the Secretary of the Department of Homeland Security to return to the United States after being removed. Olivares was indicted in the United States District Court in the Southern District of California, using the alias Ruben Rodriguez, in case #06CR0057W. This a class C felony and would be considered a grade B violation for revocation purposes.

    **RECOMMENDED ACTION:** Based upon the above allegations, probable cause has been established that a violation of supervised release has been committed. It is recommended the Court order the issuance of a warrant and order to show cause why Olivares' term of supervised release should not be revoked.

    I declare under penalty of perjury that the foregoing is true and correct. Executed on February 15, 2006.

Respectfully,

_René Worthey_
René Worthey
Senior U.S. Probation Officer
Portland, Oregon

_signature_
Assistant U.S. Attorney

**ORDER OF THE COURT**

Considered and ordered this _16_ day of February, 2006, and ordered filed and made a part of the record in the above case.

_Garr King_

The Honorable Garr M. King
U.S. District Judge

Certified to be a true and correct
copy of original filed in my office.
Dated _2-17-06_
Donald M. Cinnabond, Clerk
By _signature_ Deputy

Page 1 of 1

EXHIBIT 3

**FILED**

**2006 SEP 27 PM 3: 24**

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY _____ DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

June 2005 Grand Jury

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal Case No. 06CR0057W |
| Plaintiff, | ) | I N D I C T M E N T |
| | ) | **(Superseding)** |
| v. | ) | |
| | ) | Title 8, U.S.C., Secs. 1326(a) |
| RUBEN RODRIGUEZ, | ) | and (b) - Deported Alien Found |
| | ) | in the United States |
| Defendant. | ) | |
| | ) | |

The grand jury charges:

On or about December 5, 2005, within the Southern District of California, defendant RUBEN RODRIGUEZ, an alien, who previously had been excluded, deported and removed from the United States to Mexico, was found in the United States, without the Attorney General of the United States or his designated successor, the Secretary of the Department of Homeland Security (Title 6, United States Code, Sections 202(3) and (4), and 557), having expressly consented to the defendant's reapplication for admission into the United States; in violation of Title 8, United States Code, Sections 1326(a) and (b).

//

//

ALT:nlv:San Diego
9/26/06

1    It is further alleged that defendant RUBEN RODRIGUEZ was removed

2 from the United States subsequent to December 2, 1996.

3    DATED: September 27, 2006.

4                                    A TRUE BILL:

5

6                                    _____
                                     Foreperson

7

8 CAROL C. LAM
  United States Attorney

9

10 By: _____
      ANNALOU TIROL

11    Assistant U.S. Attorney

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

EXHIBIT 4

FILED

06 JAN 11 PM 1:51

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: _____ DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

June 2005 Grand Jury '06 CR 0057 W

| UNITED STATES OF AMERICA, | ) | Criminal Case No. _____ |
|---|---|---|
| Plaintiff, | ) | I N D I C T M E N T |
| v. | ) | Title 8, U.S.C., Sec. 1326 – Deported Alien Found in the United States |
| RUBEN RODRIGUEZ, | ) | |
| Defendant. | ) | |

The grand jury charges:

On or about December 9, 2005, within the Southern District of California, defendant RUBEN RODRIGUEZ, an alien, who previously had been excluded, deported and removed from the United States to Mexico, was found in the United States, without the Attorney General of the United States or his designated successor, the Secretary of the Department of Homeland Security (Title 6, United States Code, Sections 202(3) and (4), and 557), having expressly consented to

//
//
//
//

ADBL:kmm:San Diego
1/10/06

1  the defendant's reapplication for admission into the United States;

2  in violation of Title 8, United States Code, Section 1326.

3      DATED: January 11, 2006.

4                                              A TRUE BILL:

5

6                                              _____
                                               Foreperson
7

8  CAROL C. LAM
   United States Attorney
9

10 By:_____
       A. DALE BLANKENSHIP
11     Assistant U.S. Attorney

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                        2

EXHIBIT 5

SEALDC, TRIAL

**U.S. District Court**
**Southern District of California (San Diego)**
**CRIMINAL DOCKET FOR CASE #: 3:06-cr-00057-W All Defendants**

---

Case title: USA v. Rodriguez                                 Date Filed: 01/11/2006
Magistrate judge case number: 3:05-mj-01969        Date Terminated: 09/18/2007

---

Assigned to: Judge Thomas J. Whelan

**Defendant**

**Ruben Rodriguez** (1)                    represented by  **Joan Kerry Bader**
*TERMINATED: 09/18/2007*                                Law Offices of J Kerry Bader
*also known as*                                                      964 Fifth Avenue
Joaquine Beltran-Alvarez (1)                              Suite 214
*TERMINATED: 09/18/2007*                                San Diego, CA 92101-6128
                                                                           (619)699-5995
                                                                           Email: kbader1270@aol.com
                                                                           *LEAD ATTORNEY*
                                                                           *ATTORNEY TO BE NOTICED*
                                                                           *Designation: CJA Appointment*

**Pending Counts**                                      **Disposition**

8:1326 - Deported alien found in the
United States                                               Dismissed
(1)

Deported Alien Found in the United
States                                                          Dismissed
(1s)

**Highest Offense Level (Opening)**

Felony

**Terminated Counts**                                   **Disposition**

None

**Highest Offense Level (Terminated)**

None

**Complaints**                                             **Disposition**

8:1326 - Deported Alien Found in the
United States [ 3:05-m -1969 ]

**Plaintiff**

**United States of America**               represented by   **U S Attorney CR**
U S Attorneys Office Southern District
of California
Criminal Division
880 Front Street
Room 6293
San Diego, CA 92101
(619)557-5610
Fax: (619)557-5917
Email: Efile.dkt.gc2@usdoj.gov
*TERMINATED: 09/01/2006*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**L Marcel Stewart**
U S Attorneys Office Southern District
of California
880 Front Street
Room 6293
San Diego, CA 92101
(619)557-5610
Fax: (619)235-2757
Email: Marcel.Stewart@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Assistant United States*
*Attorney*

| Date Filed | # | Docket Text |
|---|---|---|
| 12/09/2005 | | DEFENDANT Ruben Rodriguez arrested [ 3:05-m -1969 ] (tml) (Entered: 12/13/2005) |
| 12/12/2005 | 1 | COMPLAINT against defendant Ruben Rodriguez, signed by Magistrate Judge Louisa S. Porter [ 3:05-m -1969 ] (dkt clerk) (Entered: 12/12/2005) |
| 12/12/2005 | 2 | Enter Order by Magistrate Judge Louisa S. Porter; first appearance of Ruben Rodriguez on cmp; Attorney Federal Defenders appointed; Dft Ruben Rodriguez informed of charges ; $25,000 C/S bond set for Ruben Rodriguez ; 18:3142(d) hold until 12/27/05 as to defendant Ruben Rodriguez ; preliminary hrg set for 9:00 12/27/05 for Ruben Rodriguez before Mag Judge Louisa Porter ; Court Reporter: POR05-1:337-2399 [ 3:05-m -1969 ] (tml) (Entered: 12/13/2005) |
| 12/12/2005 | 3 | ORDER by Magistrate Judge Louisa S. Porter setting conditions of release for Ruben Rodriguez restrict travel to State of Ca; State of Oregon and do not enter Mexico; 18:3142(d) hold until 12/27/05 [ 3:05- |

| | | m -1969 ] (kat) (Entered: 12/13/2005) |
|---|---|---|
| 12/27/2005 | 4 | Minutes: Enter Order by Magistrate Judge Louisa S. Porter, preliminary hrg continued to 2:00 1/5/06 for Ruben Rodriguez before Mag Judge Louisa Porter ; Court Reporter: POR05-1;319 [ 3:05-m -1969 ] (ibf) (Entered: 12/27/2005) |
| 01/05/2006 | 5 | Minutes: Enter Order by Magistrate Judge Louisa S. Porter: preliminary hrg cont to 2:00 1/10/06 for Ruben Rodriguez before Mag Judge Louisa Porter , Appointment of counsel held and placed on a sealed tape. Court relieved withdrawing attorney Federal Defenders for Ruben Rodriguez and substituting attorney Joan Kerry Bader ; Court Reporter: POR06-1:1451-1528,2349-2686 [ 3:05-m -1969 ] (kat) (Entered: 01/05/2006) |
| 01/10/2006 | 6 | Minutes: Enter Order by Magistrate Judge Louisa S. Porter, preliminary hrg continued to 3:00 1/11/06 for Ruben Rodriguez before Mag Judge Louisa Porter , XT1 from 1/10/06 to 1/11/06 as to Ruben Rodriguez (Continuance-miscarriage of justice) , XT4 from 1/10/06 to 1/11/06 as to Ruben Rodriguez (Continuance re counsel) ; Court Reporter: POR06-1;1199-2219 [ 3:05-m -1969 ] (ibf) (Entered: 01/10/2006) |
| 01/11/2006 | 7 | INDICTMENT by USA . Counts filed against Ruben Rodriguez (1) count(s) 1 . Any XT1 excludable that extends beyond the indictment date is terminated at the point of indictment. (dkt clerk) (Entered: 01/12/2006) |
| 01/11/2006 | 8 | Minutes: Enter Order by Magistrate Judge Louisa S. Porter; Defendant states true name to be Joaquine Beltran-Alvarez (systems); dft Joaquine Beltran-Alvarez arraigned on the Indictment; not guilty plea entered; Atty present; , motion setting set for 9:00 1/17/06 for Joaquine Beltran-Alvarez before Judge Thomas Whelan ; Court Reporter: POR06-1;0-115 (dkt clerk) Modified on 01/12/2006 (Entered: 01/12/2006) |
| 01/17/2006 | 9 | Minutes: Enter Order by Judge Thomas J. Whelan; The court orders motion hrg/trial setting set for 2:00 2/13/06 for Joaquine Beltran-Alvarez before Judge Thomas Whelan ; Court Reporter: M. Pierson (dkt clerk) (Entered: 01/18/2006) |
| 02/06/2006 | 14 | RESPONSE and Opposition by plaintiff USA to motion to compel discovery [12-1], motion leave to file further motions [12-2] (dkt clerk) (Entered: 02/08/2006) |
| 02/06/2006 | 14 | Notice of Motion and Motion for reciprocal discovery , for fingerprint exemplars by USA as to Joaquine Beltran-Alvarez; motion hrg set for 02/13/06 (dkt clerk) (Entered: 02/08/2006) |
| 02/07/2006 | 10 | Request by defendant Joaquine Beltran-Alvarez for: Order shortening time to file motions before the hearing set for 02/13/06; (Filed as a declaration in support of motion) (dkt clerk) (Entered: 02/08/2006) |
| 02/07/2006 | 11 | ORDER by Judge Thomas J. Whelan as to defendant Joaquine Beltran-Alvarez granting request for order shortening time to file motions 11 days prior to the motion hearing set for 02/13/06 [10-1] (dkt clerk) (Entered: 02/08/2006) |

| | | |
|---|---|---|
| 02/07/2006 | 12 | Notice of Motion and Motion by Joaquine Beltran-Alvarez to compel discovery and leave to file further motions ; motion hrg set for 02/13/06 at 2:00 (dkt clerk) (Entered: 02/08/2006) |
| 02/07/2006 | 13 | MEMORANDUM by defendant Joaquine Beltran-Alvarez in support of [12-1], of [12-2] (dkt clerk) (Entered: 02/08/2006) |
| 02/13/2006 | 15 | Minutes: Enter Order by Judge Thomas J. Whelan; At the request of defense counsel, the Court orders motion hrg/trial setting continued to 9:00 3/10/06 for Joaquine Beltran-Alvarez before Judge Thomas Whelan ; Court Reporter: M. Pierson (dkt clerk) (Entered: 02/14/2006) |
| 02/22/2006 | 16 | NOTICE of hearing; On Court's own motion, the motion hrg/trial setting is vacated and reset for 1:00 3/10/06 for Joaquine Beltran-Alvarez before Judge Thomas Whelan ; Defense counsel to notify the defendant (dkt clerk) (Entered: 02/22/2006) |
| 03/10/2006 | 17 | Minutes: Enter Order by Judge Thomas J. Whelan; cont for status hrg; at the request of defense counsel, status hrg cont to 9:00 4/10/06 for Joaquine Beltran-Alvarez before Judge Thomas Whelan ; Court Reporter: Melissa Pierson (kaj) (Entered: 03/14/2006) |
| 04/10/2006 | 18 | Minutes: Enter Order by Judge Thomas J. Whelan; At the request of defense counsel, the Court orders motion hrg/trial setting set for 2:00 5/15/06 for Joaquine Beltran-Alvarez before Judge Thomas Whelan ; Court Reporter: M. Pierson (dkt clerk) (Entered: 04/10/2006) |
| 05/15/2006 | 19 | Minutes: Enter Order by Judge Thomas J. Whelan granting motion leave to file further motions [12-2], granting motion for reciprocal discovery [14-1], granting motion for fingerprint exemplars [14-2]; The Court orders motion hrg/trial setting continued to 2:00 5/22/06 for Joaquine Beltran-Alvarez before Judge Thomas Whelan ; Court Reporter: M. Pierson (dkt clerk) (Entered: 05/16/2006) |
| 05/15/2006 | 20 | Notice of Motion and Motion by Joaquine Beltran-Alvarez to compel discovery , and for leave to file further motions ; Motion hearing set for 05/22/06 at 2:00 (dkt clerk) Modified on 05/16/2006 (Entered: 05/16/2006) |
| 05/15/2006 | 22 | Notice of Motion and MOTION IN LIMINE by Joaquine Beltran-Alvarez to preclude the Government from using deport orders as evidence of alienage , to exclude the CNR , to preclude 404(B) and 609 , to exclude the Government Case Agent , to exclude the Indictment from the jury room , to allow attorney-conducted voir dire , to preclude witnesses from referring to Mr. Beltran as "the alien" , to preclude the A-File Agent from testifying about immigration proceedings , to preclude reference to the events of September 11 and/or the war on terrorism and Mr. Beltran's prior conviction or aggravated felon , to order production of grand jury transcripts ; assigned to Judge Thomas J. Whelan; motion hrg set for 05/22/06 at 2:00 (dkt clerk) Modified on 05/16/2006 Modified on 8/29/2007 to add further motion text (nsp). (Entered: 05/16/2006) |
| 05/15/2006 | 21 | MEMORANDUM by defendant Joaquine Beltran-Alvarez in support of |

| | | [20-1], of [20-2] (dkt clerk) (Entered: 05/16/2006) |
|---|---|---|
| 05/15/2006 | 23 | MEMORANDUM by defendant Joaquine Beltran-Alvarez in support of [22-1], of [22-2], of [22-3], of [22-4], of [22-5], of [22-6], of [22-7], of [22-8], of [22-9], of [22-10] (dkt clerk) (Entered: 05/16/2006) |
| 05/22/2006 | 24 | Minutes: Enter Order by Judge Thomas J. Whelan; jury trial set for 9:00 7/11/06 for Joaquine Beltran-Alvarez before Judge Thomas Whelan ; Court Reporter: M. Pierson (dkt clerk) (Entered: 05/23/2006) |
| 07/06/2006 | 30 | Minutes: Enter Order by Judge Thomas J. Whelan; At the request of government counsel, the court orders the trial date of 7/11/06 vacated and the case reset for jury trial at 9:00 on 8/8/06 for Joaquine Beltran-Alvarez before Judge Thomas Whelan ; Court Reporter/ECR: Melissa Pierson (jmj) (Entered: 07/06/2006) |
| 08/03/2006 | 33 | Minutes: Enter Order by Judge Thomas J. Whelan; At the request of defense counsel the court orders the jury trial reset for 9:00 on 9/19/06 for Joaquine Beltran-Alvarez before Judge Thomas Whelan ; Court Reporter/ECR: Melissa Pierson (jmj) (Entered: 08/03/2006) |
| 09/08/2006 | | Set Hearing as to Joaquine Beltran-Alvarez: At the request of counsel, Status Conference set for 9/12/2006 09:00 AM in Courtroom 7 before Judge Thomas J. Whelan. (cmy, ) (Entered: 09/08/2006) |
| 09/12/2006 | 35 | Minute Entry for proceedings held before Judge Thomas J. Whelan :Status Conference re trial date as to Joaquine Beltran-Alvarez held on 9/12/2006 Jury Trial date of 9/19/06 vacated and re-set for 10/31/2006 09:00 AM in Courtroom 7 before Judge Thomas J. Whelan. (Plaintiff Attorney Annalou Tirol.)(Defendant Attorney Joan Kerry Bader.) (cmy, ) (Entered: 09/12/2006) |
| 09/12/2006 | | At the request of defense counsel, the court vacates the jury trial date of 9/19/06. (cmy, ) (Entered: 09/12/2006) |
| 09/27/2006 | 36 | Superseding INDICTMENT as to Ruben Rodriguez (1) count(s) 1s. (jmj) (Entered: 10/02/2006) |
| 10/13/2006 | 37 | Minute Entry for proceedings held before Magistrate Judge Leo S. Papas.Arraignment as to Ruben Rodriguez (1) Count 1s held on 10/13/2006. Not Guilty plea entered. Deft object to the timeliness of the filing of the supceceding indictment. The objection is noted for the record. Jury Trial set for 10/31/2006 09:00 AM in Courtroom B before Judge Thomas J. Whelan. (Tape #LSP06-1:41-1:43).(Plaintiff Attorney AUSA, ANALOU TIROL).(Defendant Attorney KERRY BADER). (tml) (Entered: 10/16/2006) |
| 10/24/2006 | 38 | TRIAL BRIEF by United States of America as to Ruben Rodriguez (Tirol, AnnaLou) (Entered: 10/24/2006) |
| 10/24/2006 | 39 | MOTION in limine to Admit *FRE 609 Evidence*, MOTION in limine to Admit Documents *from A-File*, MOTION in limine to Admit Records *Statments From Prior Proceeding*, MOTION in limine to Admit Testimony *By Expert Regarding Fingerprint Identificatoin*, MOTION in |

| | | |
|---|---|---|
| | | limine to Exclude *Argument Regarding Duress or Necessity*, MOTION in limine to Exclude Witnesses *From The Courtroom*, MOTION in limine to Preclude *Reference to INS Recordkeeping And Spoliation*, MOTION in limine to Preclude Documents *or Reference to Potential Punishment*, MOTION in limine to Preclude Evidence *Regarding The Lawfulness of the Deportation*, MOTION in limine to Preclude Hearsay *Reference to Residency or Immigration Status*, MOTION in limine to Preclude Testimony *Reference to Why Defendant Re-Entered the United States* by United States of America as to Ruben Rodriguez. (Tirol, AnnaLou) (Entered: 10/24/2006) |
| 10/24/2006 | 41 | Proposed Jury Instructions by Ruben Rodriguez (jmj) (Entered: 10/25/2006) |
| 10/24/2006 | 44 | MOTION in limine to Preclude the government from using documents that contain prejudicial, unsubstantiated and irrelevant material by Ruben Rodriguez. (Attachments: # 1 Memo of Points and Authorities)(jmj) (Entered: 10/25/2006) |
| 10/25/2006 | 40 | NOTICE OF HEARING as to Defendant Ruben Rodriguez. Status Conference set for 10/26/2006 09:00 AM in Courtroom 7 before Judge Thomas J. Whelan. (cmy, ) (Entered: 10/25/2006) |
| 10/25/2006 | 42 | Sealed Document (jmj) (Entered: 10/25/2006) |
| 10/25/2006 | 43 | Sealed Document (jmj) (Entered: 10/25/2006) |
| 10/26/2006 | 45 | Minute Entry for proceedings held before Judge Thomas J. Whelan :Status Conference re competency as to Ruben Rodriguez held on 10/26/2006 The Court orders an examination of the defendant pursuant to 18 USC 4241 to determine present mental competency. AUSA to submit proposed order.The Court orders the report to be submitted to counsel and the Court by 12/1/06.Jury trial date of 10/31/06 ordered vacated. Status Conference set for 12/4/2006 09:00 AM in Courtroom 7 before Judge Thomas J. Whelan. (Court Reporter Melissa Pierson).(Plaintiff Attorney AnnaLou Tirol).(Defendant Attorney Joan Kerry Bader). (cmy, ) (Entered: 10/26/2006) |
| 10/30/2006 | 46 | ORDER FOR PSYCHIATRIC examination as to Ruben Rodriguez. Signed by Judge Thomas J. Whelan on 10/27/06. (mam) (Entered: 11/01/2006) |
| 11/08/2006 | 47 | NOTICE OF HEARING as to Defendant Ruben Rodriguez. At the request of defense counsel, the Court (Judge Whelan) orders aStatus Conference (regarding the 4241 examination) set for 11/9/2006 09:00 AM in Courtroom 7 before Judge Thomas J. Whelan. (cmy) (Entered: 11/08/2006) |
| 11/09/2006 | 48 | Minute EntryStatus Conference re competency examination as to Ruben Rodriguez held on 11/9/2006 before Judge Whelan.(Court Reporter Melissa Pierson).(Plaintiff Attorney Steven DeSalvo for Annalou Tirol). (Defendant Attorney Joan Kerry Bader).(cmy) (Entered: 11/09/2006) |
| | | |

| | | |
|---|---|---|
| 11/14/2006 | <u>49</u> | ORDER FOR PSYCHIATRIC examination pursuant to 18 USC 4241 as to Ruben Rodriguez. Signed by Judge Thomas J. Whelan on 11/9/06. (cmy) (Entered: 11/14/2006) |
| 11/20/2006 | 50 | NOTICE OF HEARING as to Defendant Ruben Rodriguez. Status Conference re competency exam set for 12/4/2006 09:00 AM in Courtroom 7 before Judge Thomas J. Whelan.(cmy) (Entered: 11/20/2006) |
| 11/27/2006 | 51 | NOTICE OF HEARING as to Defendant Ruben Rodriguez. At the request of defense counsel, the Court orders the case set for Status Conference on 11/29/2006 09:00 AM before Judge Thomas J. Whelan. (cmy) (Entered: 11/27/2006) |
| 11/29/2006 | 52 | Minute Entry Status Conference re competency examination as to Ruben Rodriguez held on 11/29/2006 before Judge Whelan. The Court orders the examination by Dr.Thomas Wegman be held December 19, 2006 from 9:00 a.m. to 12:00 noon in the U.S. Marshal's office. It is further ordered that Dr. Wegman be permitted to bring his laptop into the room for the examination and that a room without a screen be used during the testing section of the examination.The Court vacates the status conference of 12/4/06.The Court orders the report to be delivered to the Court and counsel by 1/2/07 and sets a status conference for 1/4/07 at 9:00 a.m. The Court orders the letter from MCC dated 11/22/06 filed under seal.(Court Reporter Melissa Pierson).(Plaintiff Attorney Steve Miller for AnnaLou Tirol).(Defendant Attorney Joan Kerry Bader).(cmy) Modified on 11/29/2006 (cmy, ) (Entered: 11/29/2006) |
| 01/04/2007 | 56 | Minute EntryCompetency Hearing as to Ruben Rodriguez held on 1/4/2007 before Judge Whelan.Dr. Wegman's report marked as Court's exhibit 1, admitted into evidence. Court orders Court's exhibit 1 filed under seal. The Court finds the defendant not presently competent to stand trial and order the defendant committed to the custody of the Attorney General for a period of time, not to exceed 120 days.The Court orders the Bureau of Prisons to submit a report to the Court and counsel by 5/4/07 and sets the case for a Status Conference 5/7/2007 09:00 AM in Courtroom 7 before Judge Thomas J. Whelan. Counsel for the government to submit a proposed order.(Court Reporter Melissa Pierson). (Plaintiff Attorney Dale Blankenship for AnnaLou Tirol).(Defendant Attorney Joan Kerry Bader).(cmy) (Entered: 01/04/2007) |
| 01/05/2007 | <u>57</u> | ORDER of Commitment for Psychological Treatment Pursuant to 18:4241 as to Ruben Rodriguez; The report of said psychologist or psychiatrist is to be sent to the undersigned District Court Judge no later than 5/4/2007; This matter is set for a status hearing on 5/7/2007 at 9:00am before Judge Whelan. Signed by Judge Thomas J. Whelan on 1/5/2007. (jmj) (Entered: 01/08/2007) |
| 05/07/2007 | 58 | Minute Entry:Status Conference as to Ruben Rodriguez held on 5/7/2007 before Judge Whelan. The defendant not appearing and the BOP report not yet submitted, the Court orders the Status Conference continued to 6/4/2007 09:00 AM in Courtroom 7 before Judge Thomas J. Whelan. |

| | | |
|---|---|---|
| | | (Court Reporter Melinda Setterman).(Plaintiff Attorney AnnaLou Tirol). (Defendant Attorney Joan Kerry Bader). (cmy) (Entered: 05/07/2007) |
| 06/04/2007 | 59 | Minute Entry:Status Conference as to Ruben Rodriguez held on 6/4/2007 before Judge Whelan. Defendant not appearing, still at Butner, the Court orders the case set for a further Status Conference on 6/18/2007 09:00 AM in Courtroom 7 before Judge Thomas J. Whelan. (Court Reporter Melissa Pierson).(Plaintiff Attorney Jason Forge for AnnaLou Tirol). (Defendant Attorney Kerry Bader). (cmy) (Entered: 06/04/2007) |
| 06/18/2007 | 60 | Minute Entry:Continuance of Status Conference as to Ruben Rodriguez held on 6/18/2007 before Judge Whelan. At the request of defense counsel, the Court orders the Status Conference continued to 7/9/2007 09:00 AM in Courtroom 8 before Judge Thomas J. Whelan. (Court Reporter Melissa Pierson).(Plaintiff Attorney AnnaLou Tirol).(Defendant Attorney Joan Kerry Bader). (cmy) (Entered: 06/18/2007) |
| 07/09/2007 | 61 | Minute Entry:Competency Hearing as to Ruben Rodriguez held on 7/9/2007 before Judge Whelan. The Court orders the Bureau of Prisons report, dated 5/14/07, filed under seal. The Court finds the defendant competent. Jury Trial set for 9/11/2007 09:00 AM in Courtroom 7 before Judge Thomas J. Whelan. Motion Hearing set for 9/4/2007 02:00 PM in Courtroom 7 before Judge Thomas J. Whelan. (Court Reporter Melissa Pierson).(Plaintiff Attorney AnnaLou Tirol).(Defendant Attorney Joan Kerry Bader). (cmy) (Entered: 07/09/2007) |
| 08/30/2007 | 66 | NOTICE OF ATTORNEY APPEARANCE L Marcel Stewart appearing for USA. (Stewart, L) (Entered: 08/30/2007) |
| 09/04/2007 | 69 | Minute Entry:Motion hearing as to Ruben Rodriguez held 9/4/07 before Judge Whelan. The Court orders:Motion (20-2) to file further motions denied. Motion (22-1) to preclude evidence of deport orders denied. Motion (22-2) to exclude CNR denied. Motion (22-3) to preclude 404(b) moot. Motion (22-4) to exclude govt case agent denied. Motion (22-5) exclude indictment from jury room granted. Motion (22-6) for attorney voir dire granted. Motion (22-7) to preclude reference to defendant as alien granted. Motion (22-8) to preclude A-File testimony re immigration proceedings moot. Motion (22-9) preclude reference to 911 events/terrorism granted. Motion (22-10) produce grand jury transcripts denied. Motion (44-1) to preclude granted in part, denied in part. Motion (39-2) to admit A-File documents granted. Motion(39-3) to admit records of prior statements granted. Motion (39-4) to admit testimony by expert re fingerprint id granted. Motion(39-5) to exclude duress or necessity argument granted. Motion (39-6) to exclude witnesses granted. Motion (39-7) to preclude reference to INS recordkeeping granted in part, denied in part. Motion (39-8) to preclude documents or reference to punishment granted. Motion (39-9) preclude evidence of lawfulness of deportation granted. Government's oral motion for reciprocal discovery granted. At the request of both counsel, the Court vacates the 9/11/07 trial date and order the case reset for Jury Trial on 9/18/2007 09:00 AM in Courtroom 7 before Judge Thomas J. Whelan. (Court Reporter Melissa Pierson.) (Plaintiff Attorney L. Marcel Stewart).(Defendant Attorney Joan Kerry |

| | | Bader). (cmy) Modified on 9/5/2007 to add government's oral motion (cmy). (Entered: 09/05/2007) |
|---|---|---|
| 09/12/2007 | 70 | TRIAL BRIEF by United States of America as to Ruben Rodriguez (Stewart, L) (Entered: 09/12/2007) |
| 09/17/2007 | 71 | WITNESS LIST by United States of America as to Ruben Rodriguez (Attachments: # (1) Appendix Government's Exhibit List)(Stewart, L) (Entered: 09/17/2007) |
| 09/17/2007 | 72 | Proposed Jury Instructions by United States of America as to Ruben Rodriguez (Attachments: # 1 Appendix Proposed Jury Instructions) (Stewart, L) (Entered: 09/17/2007) |
| 09/18/2007 | 78 | Minute Entry:Jury Trial (1st Day) as to Ruben Rodriguez held before Judge Thomas J. Whelan on 9/18/07. Jury Impaneled and sworn. Witnesses sworn and testify. Exhibits marked and admitted. Government rests. Defendant's oral motion for judgment of acquittal (Rule 29) granted. Jury excused. Exhibits returned to counsel.(Court Reporter Melissa Pierson).(Plaintiff Attorney L. Marcel Stewart).(Defendant Attorney Joan Kerry Bader). (cmy) Modified on 9/18/2007 (cmy). (Entered: 09/18/2007) |
| 09/18/2007 | 79 | JUDGMENT of dismissal as to Ruben Rodriguez (1) filed.. Signed by Judge Thomas J. Whelan on 9/18/07. (cmy) (Entered: 09/18/2007) |
| 09/18/2007 | 80 | Filed abstract for release of Ruben Rodriguez (cmy) (Entered: 09/18/2007) |
| 09/18/2007 | 81 | Filed defendant's Proposed Voir Dire by Ruben Rodriguez (cmy) (Entered: 09/19/2007) |
| 09/18/2007 | 82 | Filed EXHIBIT LIST with Court's Exhibit one attached. (cmy) (Entered: 09/19/2007) |
| 09/18/2007 | 83 | Filed jury trial WITNESS LIST. (cmy) (Entered: 09/19/2007) |
| 09/20/2007 | 84 | Judgment of Dismissal Returned Executed as to Ruben Rodriguez on 9/19/07. (aje) (Entered: 09/20/2007) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 11/22/2007 14:17:59 | | |
| PACER Login: | kb0252 | Client Code: | |
| Description: | Docket Report | Search Criteria: | 3:06-cr-00057-W |
| Billable Pages: | 6 | Cost: | 0.48 |

EXHIBIT 6

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

**FILED**

SEP 1 8 2007

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY

UNITED STATES OF AMERICA,

Plaintiff,

vs.

Ruben Rodriguez,

Defendant.

CASE NO. 06CR0057-W

**JUDGMENT OF DISMISSAL**

     IT APPEARING that the defendant is now entitled to be discharged for the reason that:

\_\_\_\_ an indictment has been filed in another case against the defendant and the Court has granted the motion of the Government for dismissal of this case, without prejudice; or

\_\_\_\_ the Court has dismissed the case for unnecessary delay; or

\_\_\_\_ the Court has granted the motion of the Government for dismissal; or

\_X\_ the Court has granted the motion of the defendant for a judgment of acquittal; or

\_\_\_\_ a jury has been waived, and the Court has found the defendant not guilty; or

\_\_\_\_ the jury has returned its verdict, finding the defendant not guilty;

\_X\_ of the offense(s) of: 8 USC 1326.

     IT IS THEREFORE ADJUDGED that the defendant is hereby discharged.

DATED: 9/18/07

Thomas J. Whelan
UNITED STATES DISTRICT JUDGE

EXHIBIT 7

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA )
)
vs )
)
*Ruben Rodriguez* )
)
)

CASE NUMBER _06CR0057W_

ABSTRACT OF ORDER

Booking No. _64626065_

TO THE UNITED STATES MARSHAL AND / OR WARDEN, METROPOLITAN CORRECTIONAL CENTER:

Be advised that under date of _9-18-07_

the Court entered the following order:

_X_ Defendant be released from custody.

_____ Defendant placed on supervised / unsupervised probation / supervised release.

_____ Defendant continued on supervised / unsupervised probation / supervised release and released from custody.

_____ Defendant released on $_____ bond posted.

_____ Defendant appeared in Court. FINGERPRINT & RELEASE.

_____ Defendant remanded and ( _____ bond) ( _____ bond on appeal) exonerated.

_____ Defendant sentenced to TIME SERVED, supervised release for _____ years.

_____ c.c. judgment Court of Appeals ( _____ affirming) ( _____ reversing) decision of this Court: _____ dismissing appeal filed.

_____ Bench Warrant Recalled.

_____ Defendant forfeited collateral.

_X_ Case Dismissed.

_____ Defendant to be released to Pretrial Services for electronic monitoring.

_____ Other._____

UNITED STATES MAGISTRATE JUDGE

OR

Received_____ W. SAMUEL HAMRICK, JR. Clerk
DUSM                    by _C. Tremble_
                                        Deputy Clerk

Crim-9 (Rev 6-95)

★ U.S. GPO: 1996-783-398/40151

CLERKS' COPY

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| United States of America, plaintiff | Case No. to be set |
| vs. | **DECLARATION OF SERVICE** |
| defendant named as Jose Olivare | Person Served: Assistant United States Attorney Marcel |
|  | Date Served: |

I, the undersigned declare under penalty of perjury that I am over the age of eighteen years and not a party to this action; that I served the above named person the following documents: petition for writ of habeas corpus, and motion for leave to withdraw petition for writ of habeas corpus filed in the following manner: (check one)

1)          By personally delivering copies to the person served.

2)           By leaving, during usual office hours, copies in the office of the person served with the person who apparently was in charge and thereafter mailing (by first-class mail, postage prepaid) copies to ther person served at the place where the copies were left.

3)    ✗     By leaving copies at the dwelling house, usual place of abode, or usual place of business of the person served in the presence of a competent member of the household or a person apparently in charge of his office or place of business, at least 18 years of age, who was informed of the general nature of the papers, and thereafter mailing (by first-class mail, postage prepaid) copies to the person served at the place where the copies were left.

4)           By placing a copy in a separate envelope, with postage fully prepaid, for each address named below and depositing each in the U.S. Mail at
                        on                  , 20            .

Executed on _____ November 26 _____ , 20 07        at

_____

::ODMA\PCDOCS\WORDPERFECT\14560\2 May 5, 1999 (10:01am)

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS** *Jose Olivares*
*Defendant named as*

*San Diego, CA*

**DEFENDANTS** *US Attorney at office*

'07 CV 2234 BTM (AJB)

SOUTHERN DISTRICT OF CALIFORNIA

County of Residence of First Listed Defendant *San Diego, CA*

**(b)** County of Residence of First Listed Plaintiff *San Diego, CA*
(EXCEPT IN U.S. PLAINTIFF CASES)

(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
*Sherry Boden, Esq. 964 5th Ave Ste 214 San Diego CA 92101*

Attorneys (If Known) *Marcel Stewart, AUSA*
*US Attorney's Office 880 Front St San Diego CA 92*

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☒ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900 Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☒ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☒ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | *relief prisoner* | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

## V. ORIGIN (Place an "X" in One Box Only)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity): *28 USC 2241, 2255*

Brief description of cause: *Plaintiff is in custody in violation of Statutes & Constitution of The USA*

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:

JURY DEMAND: ☐ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):

JUDGE *T. Whelan 06-0057W*
*Judge Adler 07 mj 2274*

DOCKET NUMBER

DATE *11/26/07*

SIGNATURE OF ATTORNEY OF RECORD *[signature]*

**FOR OFFICE USE ONLY**

RECEIPT # *144766* AMOUNT *5.00* APPLYING IFP ____ JUDGE ____ MAG. JUDGE ____

*fr 11/26/07*

**UNITED STATES
DISTRICT COURT**
SOUTHERN DISTRICT OF CALIFORNIA
SAN DIEGO DIVISION

# 144766   — SR
* * C O P Y * *
November 26, 2007
10:17:19

**Habeas Corpus**
USAO #.: 07CV2234
Judge..: BARRY T MOSKOWITZ
Amount.:                    $5.00 CK
Check#.: BC#1609


**Total-> $5.00**


FROM: OLIVARES V. US ATTORNEY'S OFFI
       HABEAS CORPUS